Good afternoon everyone. Welcome to the Illinois Palace Court, 1st District, 6th Division. We ask the Brewers who are ready to argue, please step up, both of them, and introduce themselves and tell us who you represent. Good afternoon, Your Honor. My name is Andy Norman, and I represent what is actually known as the Brewer's Church in this case. It's the Defendant Appellate's. Good afternoon, Your Honor. Ken Bella, D-E-L-L-A-H, for the Plaintiff's Appellate's. All right, thank you, Counsel. Under Illinois Supreme Court Rule 352B, each side will have about 15 minutes for argument, and you'll have a few minutes for rebuttal as well. Mr. Norman, we may change that if we get a lot of questions or if they become repetitive. Please remember to speak loudly because our microphones do not amplify very well. They are here to make a recording, and please understand we have read the briefs. We are very familiar with the facts of the case and the orders that were entered along the way, so please devote your time to your strongest arguments. Thank you. And you may begin when ready, Mr. Norman. I'm ready, and thank you so much for hearing us today. It's better for me to answer your questions, and so I encourage questions, of course, but I have plenty to say otherwise. And I will keep it to what I consider to be our strongest arguments. There really are three ecclesiastical matters that stand out in this case. One is something that both parties, both sides agree is that the court found, and it did happen in the evidence, that the Brewer Church terminated the memberships of all the Nelsons early on. It was in 2011 when those termination letters went out. The trial court recognized that. The trial court found it as a fact that made note of the fact that these notices went out to all the plaintiffs in that case who had the Nelsons, but she did nothing with that. And so that is an issue that we stand out against because the court cannot rule one way or the other ecclesiastically on who is a member of a church. Did the court do that? Did the court actually adjudicate who is a member of the church as opposed to who is a member of the board of directors of a non-for-profit corporation? In effect, she did because she recognized that we had sent the revocation of membership notices. And again, the other side has agreed that that happened to all Nelson parties. Mr. Norman, how would you separate the corporation from the church following your argument? I mean, the judge made a ruling regarding the corporation, not regarding the church. But you are conflating the two. And I did not read her ruling that way. So tell me why the two are conflated. Well, I don't believe they are conflated. What really happened here, Your Honor, was that the judge built a church out of two churches. She took the two extant churches who were once together but separated in 2011 and had been operating as separate churches for all that time. And in the name of preserving the corporation, she forced two churches to come together. That's an ecclesiastical matter. Churches can decide whether they want to join other churches or not. And so I just want to make it clear that she did mention PTC, Puerto Tabernacle Church, as the corporation. And she wanted to keep the corporation together. Unfortunately, it required merging two churches, two extant churches, neither of which wanted to merge together. Well, what about the argument that back in the 50s, when this church was created by the original minister, that it voluntarily subjected itself to the Illinois Non-For-Proper Corporation Act, which provides for these remedies, and has these requirements as to the number of directors. And what happened after the trial? The court ruled that there was no balance board in place, but that everybody wanted the corporation to continue, so she implemented a remedy. But your brief is heavily slanted toward the argument of the ecclesiastical abstention, but you have the fact that the church itself voluntarily put itself under a statutory rubric that the judge was trying to work with them. I don't dispute that. I agree completely with that. But the brief reflects the reality of trying to keep the corporation together. First of all, the parties did not agree that they wanted to do what the court was requiring. In other words, for example, the court decided without explanation that there would be 26 plaintiff votes and 4 defendant votes. Was there anything that was brought out at the trial that would demonstrate that somehow there were hundreds of congregants that were not plaintiffs or defendants, or that the nucleus of people who are involved in this church are fully represented or almost fully represented in the caption of the case? Well, you said at the trial. Well, that's what we have to go with, is the record. Well, the record contains matters subsequent to that, and I know I came into the case late. I'm familiar with what happened at the trial. I don't think that the trial involved determining who was members, but then again, that was in 2015. It took a long time to get... Because we're impeded with this question, Mr. Norman, is you can see that this is a congregational church rather than a hierarchical church. Yes. Okay. So as a congregational church, the congregation gets to pick the minister, right? Well, yes. So if the congregation is 24 on one side and 4 on the other side, I guess the question is where are we going? Why was the judge erroneous in determining that she was able to fix the board of directors under the Nonprofit Corporation Act, and therefore, in the end, there was an election and your people lost and they won? Well, the problem is, and again, let me just try to make sure that we're on the same page here. I have no problem, for example, in the Hanif case, which is the case she tried to follow. They were actually very different in the settings in which they took place. But as a practical matter, under Illinois law, she had the authority to make a decision about whether to dissolve the corporation or preserve it. We don't dispute any of that. But the reality is that it could only be done by taking two separate churches. It could not be done without the two churches being forced to be forced to engage in things they did not want to do, ecclesiastical matters. Now, do you assert that? Please finish your thought on that. Yeah, and I just wanted to put this in there that it automatically brings up the First Amendment to religion clauses. And if the religion clauses are valid, again, the court does not have subject matter jurisdiction. I'm sorry, Your Honor. That's all right. Keep going, you know. No, no, I wanted to hear what you had to say. I don't know. It'll come back to me in a second. I'm really sorry. That's okay. So, for example. Oh, Mr. Knight, I just, okay. Please. Do you assert as error that the court's determination not to dissolve the corporation is a remedy, but rather to try to preserve it by appointing the custodian? Do I assert that that was an error? The follow-up question is, it appears that there's a second case hanging out there, which is solely an effort to dissolve the corporation, right? Yes. That's not before us. No, that's before. Is that your case as well? Yes, that's before Judge O'Raftis. Okay. Yes. And what's the status of that case? We're about to have an issue on stolen property and things that arose out of this case. But it does seek, well, it's related to the theft. Is there a defense being asserted there about Res Judicata that it was really something that was resolved at the trial in this case? No. Okay. It's a whole new ball of wax. Okay. Yes. I mean, Judge Larson was unwilling to go any further with the case. We tried to file a petition for dissolution there, and she insisted that we file it in chance or elsewhere. So I want to point out that I think if you considered the prospect that a government would build a church, that that would be unconstitutional. If the government was to say, we're going to be the secular government, we're going to create a church, and we're going to get involved in the details of it, that that would violate the First Amendment, that there would be an establishment, which, of course, applies to the states as well, and that would be improper. And so I want to reference one of the 16 voters subsequent to that November of 2015 ruling that the judge was involved in, in which the court said, and this is in the record of C-1238, that in its November 29th of 2016, in its paragraph two of that order, all matters are continued to December 8th, 2016 at 10 o'clock for status. If the defendants, and that's the brewers, that's my clients, have not appeared, have not approved one individual from the plaintiff's list, by that time the court will select the fifth member of the interim board of directors by randomized means. In other words, the trial court is saying that if you don't pick, and this is to the brewers, forcing them to pick a board member who is actually the third or the fifth board member in a split board, four members, two on each side, then the court will select. Do you agree that the court had the ability, notwithstanding the First Amendment, to make the determination that there was no valid board in place at the time of the trial? I agree with that. Okay. And then the question arises as to what the appropriate remedy should be. Yes. Okay. And since you are contesting the remedy that Judge Larson applied, which was to sort of force a tiebreaker and force the two sides to try to work something out, and then elect a fifth member, you had to posit then what would have been the appropriate remedy. Are you saying the only remedy she could have done was dissolve the corporation? That would have been a remedy, but I think that would have been erroneous because… What remedy do you think she could have done? Fine, fine in my client's favor, and let me explain why I say that. She did nothing with the revocation of memberships. Back in 2011 when the two churches had just split, and at that point, then that's when the revocation of all the memberships took place. If she had, and the court, of course, cannot look into the question of whether that revocation of memberships was valid because that's an ecclesiastical matter. So I believe that the only resolution, and by the way, this is a subject matter question, it can't be waived, it can't be untimely, it can be brought up in any court at any time because it involves a violation of the religion clauses of the Constitution. And she did not deal with that issue. She left it as though the Nelson Church had an equal interest, and she did, that they had an equal property interest in that, and then she ordered that the brewers no longer had dual possession, or had single possession, that they had to allow this other church to move in with them. And then she said if the parties can't come to an agreement on a merger together, then the court would design that. Mr. Norman, we understand all that, but are you suggesting that the court should have ignored the fact that the corporation, the purported corporation was in violation of the Illinois Not-for-Profit Corporation Act? There are certain things that you have to do to maintain your sense. Yes. I think we can all agree that that wasn't in place. What was the judge to have done with that? Ignore it and proceed along the way you're suggesting, or something else? No. I mean, you have not answered, Judge, the Lord's question. I'm still trying to figure out what other remedy should the trial court have used. The trial court should have ruled that it did not have jurisdiction. And why not? So let me say this. The trial court could have, without moving the nursing church into the property, she could have raised the issue of the lack of proper documentation. Is that the judge's responsibility? If the corporation is not meeting the requirements that are statutorily required, you're saying that the judge should do what? What's the judge's role in such a scenario? In a secular situation, or do we have churches who have a problem? The situation that brings you here before us today. So let's just start there. She could have ordered a dissolution of the corporation. That's the logical thing that she could have done. She could have done that as a secular matter. But not in connection with the corporation. Well, if you dissolve the corporation, all right, then you're left with real estate that's owned by a nonentity. There's all sorts of problems with that. And so where does the church, where do the congregants worship? And doesn't that implicate the First Amendment principles just as much as it does now? Maybe I'm not. I mean, I'm hearing this question, and I'm giving it the best answer I can give. I might, if I actually sat down and looked at it for a while, see a First Amendment issue that prevented that. But the fact is, the law that I'm citing, too, comes from the federal constitution. It comes from the United States Supreme Court. And that court, with multiple rulings, and the Illinois courts have followed the same principles, have said that the First Amendment prohibits activities that are otherwise lawful, that are otherwise secular if they intrude ecclesiastical matters. Mr. Chairman, you've got about three minutes left. Well, thank you, Your Honor. I just want to say that the main issue here, and the main point, is that leaving aside the revocation of memberships, which did not deal with, she was very careful here, and I'm sorry to be posted, but the court was very careful to set forth the grounds on which it could rule, restricting itself from going into First Amendment matters. And so she noted herself that the religion clauses severely circumscribed the role that civilian courts may play in resolving church property disputes, and prohibited courts from employing it to ecclesiastical matters, and that's citing the Middle Voivodes case, or the Serbian Orthodox case. And then also said, in accordance with neutral principles approach discussed above, the court's decision in this case is confined to determining, one, whether the PTC governing documents comply with Illinois statutory law, and two, whether the actions of PTC officers and directors comply with the specific requirements in both Illinois statutory law and the governing documents, and so on. And we agree completely with that. Where the court went off the track, so to speak, is in her order, which was attached to her memorandum. The order is where she started the process of merging these two churches into one, which is forbidden under the First Amendment, and taking all the steps to build and decide the government and administration of the church. Now, the Seventh Circuit has issued a case called Tomic, T-O-M-I-C, but it's one of many cases, Serbian Orthodox, where Middle Voivodes says the same thing, which is that the court may not intrude in matters of church government or administration. And her whole order, and all the subsequent orders involved building a church from those two churches. All right. Thank you, Mr. Norman. Thank you for listening. Mr. Bella. I'd like to first just mention or touch on several things that came up during Mr. Norman's phase of the argument. The status of the second case that is pending in the circuit court is that there is a dispute over personal property within the church, but in terms of addressing the merits of the case, which seeks dissolution, absolutely nothing has been done on that. We've really been waiting, from our perspective, for this court to decide, because we believe that the decision that comes from this court will bear heavily on the dissolution case that's now pending. With respect to the other issues that came up on Mr. Norman's argument, the court, and I think Judge DeLore hit on the distinction between subject matter jurisdiction and abstention. The case law refers to church cases as being outside the subject matter jurisdiction of the trial courts. I don't think that's a fair way to put it. I think a better way to refer to it is that the trial courts are abstained from deciding ecclesiastical matters. That was clearly addressed by Judge Larson below. She clearly, narrowly tailored the remedy that she drafted so that it dealt with property issues and not issues of faith. That leads into the question. Your opponent is relying on cases where it has been determined that a court went too far, let's say, by picking which rabbi should run the congregation. Your opponent is contending that by picking the board, by interfering with the normal selection of the board in any way, it's basically the equivalent of picking the reverend, the minister, which is something the cases tell us not to do. How do you respond to that? Well, first of all, Your Honor, in the amended complaint that we filed at the trial court, in the addendum portion of both count one and count two, we clearly saw property rights types of declarations from the court. We asked for an order under the Forcible Entry and Detainer Act that would allow the plaintiffs back into their church. We asked the court to adjudicate who could be directors or who should be directors and officers of the church. So we always looked at the case as being a property rights and not a religion case. Religion certainly enters into it because it's a church, but fundamentally it is a property rights case. It's a not-for-profit corporation that's been operated that way for 50 years. Keep in mind the forcibles are not before us on this bill. Well, I understand that. It's a territory judgment count that really has survived. But that issue was before the trial court. I just mention this because the plaintiffs have always looked at it as being a property rights case and not an ecclesiastical type of a case. To answer the court's question, if Judge Larson had decided, for example, that certain of the members could not be members because they believed that women could preach from the pulpit, or if the court had made a finding that a particular person should be pastor, we concede and agree that that would be an ecclesiastical matter that is outside the trial court's purview. But the trial court did not do that. Do you agree that the church is congregational and not hierarchical? Yes, sir. All right. And obviously the trial court imposed a remedy of sort of putting in the receiver, the custodian, and then the custodian presided for a while and eventually there was a new board elected. Do you want the church dissolved at this point? You don't, do you? No, sir. We very much, we want the church. We need a place to worship and the congregation is the church. Backing up to a question I had a few minutes ago. Article 11 of the bylaws of the church, and there's no dispute as to what the bylaws are, right? The existing bylaws that we in the court below had to operate under. Article 11 says the board is the only doctrine expressing lawmaking authority of the church. Given that characteristic of the board, why are we not getting too far into the realm of the cases that say you can't, we can't decide if a woman can preach from a pulpit or who's the better imam for the mosque, that kind of thing? That's a board decision. And all that the court did is provide a route or an avenue for a board to be put in place that complied with the statute. And I'd like to mention one other issue before I sit down, and that has to do with membership. This is a congregational church, and the membership is a critically important issue, and it has been from day one. When we filed our action, we named every plaintiff individually. We also named every defendant individually. This case arose because the Brewer family, Shante, the daughter, and Edna, the mother, and Fletcher, the father, and the friend of theirs, Robert McGriff, literally changed the locks on the church. The trial court found that they phonied documents that were used to gain control over the church's funds at the bank. This was a takeover by four people. The case below proceeded from beginning until the spring of 2017 when Mr. Norman entered as substitute counsel for the defendants. With these 25 plaintiffs and those four defendants, at no point prior to the February 2015 trial was there any attempt by the defendants to add additional parties on their side of the case. At no point after Judge Larson entered her November 2015 findings and opinion, did anyone on the defendant's side ever seek to add additional members on their side. It just never happened. It's not in the record, and I respectfully submit it's a fake issue. If there are any other questions that the court has, I'll be happy to entertain them before I sit down. Thank you, sir, and we'll have a five-minute reply from Mr. Norman. Thank you again. The congregational nature of this entity has been mentioned a few times. It didn't seem very important to me, but I think I want to point out that the Burgess case to which I cite, which deals with membership, was a congregational church. And it found that the same principles that apply to a hierarchical church, the same constitutional principles, apply equally to a congregational church. So I don't want there to be any misconception that we're dealing with a lesser implication of the First Amendment. Now, on Redding's side's argument, actually, he mentioned something that I forgot to mention. That the judge decided that the people who would vote in this case were the named parties. And now we had no idea that she was going to come to this place. And I want to be third-party neutral here, but I keep saying she's been dealing with or thinking about it a lot. I apologize for that because that's not my style. So we have no clue that it was true that we could have added members. In fact, the record shows that in the time before she, you know, when I got in the case in 2017, we had 70 people attending on a regular basis who we could have used to vote on our behalf. And that's far more than the 26 that she ordered. But the fact is, it's irrational to just say named plaintiffs get to argue or get to decide on this. And it violated our First Amendment rights. But also, it's just it's not realistic. The named parties were named by the plaintiff. And we never had any warning that who was a party would make any difference. So they named four of us, and they named a big group of people, probably as most of the time on the plaintiffs' list, that gives the impression of a large group going against us. In the court below, did the defendants at any time before this tie-breaking vote in the courtroom episode, right, did they say, hold it, we've got 50 congregants who show up every Sunday, and they're on our side, so we want them to participate in this election as well? No, the ruling was already made. I mean, I wasn't in the case at that point. But the ruling was already made. I understand I have to cover for that. But the ruling was already made that these were the people who would vote. And at that point, it didn't matter. In other words, we put it in, in the pretrial, I'm sorry, the reconsideration motion, the motion to reconsider that we filed prior to the termination of the case and then the reconsideration after that. So as far as suspension. What do you mean we put them in? You added the additional prospective voters or the prospective members of the congregation in a motion to reconsider? I'm sorry. We put in the affidavit of Fletcher Brewer, one of my clients, that we have 70 people who come every week. We have multiples, three or four worship services a week. And so we had that many coming on a regular basis in 2017. And so had we known that the trial court would choose the number of parties, we would have come in. In other words, what I'm saying, I may not know that. My question is, after the trial court chose in an effort to rehabilitate the corporation, so to speak, did anybody bring before the trial court the fact that there are all these other congregants out there, Judge, that you forgot about or that we did not bring to your attention before? Of course. And they are legitimate members of the congregation and should participate in it. Was there such a motion filed? No, there wasn't. It was put in an affidavit. No, no. Counsel, I'm asking a very specific question. Putting something in an affidavit and filing a motion where you ask the court to grant specific relief are two different things. I'm asking, was this put in a motion where you said to the court, here are all these congregants that were not included in the first count, Your Honor, but they are specific, legitimate members of this congregation and should be allowed to vote? Was there such a motion filed? No, not at that. And, Your Honor, if I can just add one last point I wanted to do with the question, because it came up of abstention, and then I'll. You've got about 35 seconds. Okay. Abstention is not an issue in the case, and it never has been. It's jurisdiction. There's no question about it. Mr. Barrett argued that in his brief. But abstention implies that the court can engage in violations of the First Amendment, but she cannot. And I just want to read from the Burgess case. The neutral principles doctrine has never been extended to religious controversies in the areas of church government, order, and discipline, nor should it be. In other words, it's never been applied to church government, which is the issue here, order and discipline. And so the doctrine that counsel referenced, neutral principles, does not help here. There's no jurisdiction to build a church if you're a secular court. And with that, thank you very much. Thank you, counsel, on both sides. The court will take the matter under advisement.